RICE LAKE GOLF CLUB, INC., and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*April 3—May 1, 1934.*

For the appellants there was a brief by *Olin & Butler,* and oral argument by *Byron H. Stebbins,* all of Madison.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

*Laurence S. Coe* of Rice Lake, for the respondent Everson.

ROSENBERRY, C. J.   If the applicant Everson was an employee within the meaning of the compensation act, it would seem to follow as a logical conclusion from the facts

stated, that he was performing service growing out of and incidental to that employment. Before that question can arise, it must be found that he was an employee. The term "employee" is defined by sec. 102.07, Stats., which so far as applicable, is as follows:

" 'Employe' as used in this chapter means:

. . .

"(4) Every person in the service of another under any contract of hire, express or implied." .

The facts found by the commission as well as the undisputed evidence upon the trial establish the fact that there was no contract of hire, express or implied. The practice followed is one common to many country golf courses. There is not enough patronage to warrant the club maintaining a caddy master with a staff of caddies. Boys in the neighborhood are permitted to come upon the grounds, and there to await the appearance of a golf player who desires to employ a caddy. The terms of the employment are fixed by the player, compensation for the service of the boy is paid directly to him, and his term of employment ends when his employer decides to quit the game. The golf club which owns the premises upon which the golf player plays has no contract either with the player or with the caddy, nor is a player required to employ a caddy, and he may choose from the boys then upon the premises such one of them as he likes. It appears in this case and it is a common practice in many other cases that the boys among themselves enforce a certain priority of right to be chosen. With that the club had nothing to do. A player might bring his caddy with him or play without a caddy. That was entirely optional with him. In this respect the facts of this case distinguish it from many of the cases cited where the club maintains a staff of caddies, caddies are hired through the club, their compensation paid by the club, the liabilities for injury to the caddy are assumed by the club, and an entirely different situation exists. The finding that Mr. and Mrs. Caldwell acted as caddy masters is

supported by the testimony only if a very restricted meaning be given to the term. If it be said that they assumed without authority from the plaintiff to do some of the things ordinarily done by a caddy master, the statement finds support in the evidence. They employed no one, paid no compensation to any one, and what they did amounted to no more than policing the grounds. No one has pointed to any circumstance which by any stretch of the imagination can be made to answer the calls of a contractual relationship between the club and the applicant. Inasmuch as the relation of employer and employee did not exist as between the plaintiff and the claimant, Everson, by reason of the statutory definition of the term "employee," the Workmen's Compensation Act is not applicable. *Schanen v. Industrial Comm.* 200 Wis. 440, 228 N. W. 520; *Milwaukee Toy Co. v. Industrial Comm.* 203 Wis. 493, 234 N. W. 748; *Neitzke v. Industrial Comm.* 208 Wis. 301, 242 N. W. 163.

An attempt is made to support the award on the theory that the caddies in rendering service to the player made the grounds more attractive, and so brought business to the club and thereby conferred a benefit. The relation of employer and employee does not arise as a result of benefits conferred. There must be either expressly or by implication a contract of hire. In cases where caddies are furnished by the club, porters by sleeping-car companies, bootblacks, newsboys and vendors by hotels, nurses by a visiting nurses' association, the relationship does ordinarily arise because the one who furnishes the service is under contract with the employer, although his compensation may be paid in whole or in part by the person to whom the service is rendered. Such cases have no application to the facts in this case.

*By the Court.*—Judgment appealed from is reversed, and cause remanded with directions to enter judgment setting aside the award.

FAIRCHILD, J., dissents.